IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUE J. ADT and THE ESTATE OF
JOSEPH F. ADT,

       Plaintiffs,

v.                                 Civil Action No. 3:17cv162

NATIONSTAR MORTGAGE LLC,

       Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Nationstar Mortgage, LLC's

("Nationstar") Motion for Judgment on the Pleadings (the "Motion"), brought pursuant to

Federal Rule of Civil Procedure 12(c).[1] (ECF No. 5.) Plaintiffs Sue J. Adt and the Estate of

Joseph F. Adt responded,[2] (ECF No. 9), and Nationstar replied, (ECF No. 14). The Court

dispenses with oral argument because the materials before it adequately present the facts and

legal contentions, and argument would not aid the decisional process. Accordingly, the matter is

ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[3] and 1367.[4]

---

[1] Federal Rule of Civil Procedure 12(c) provides that: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

[2] The Court will refer to both Plaintiffs collectively as "Plaintiffs," and to Plaintiff Sue Adt individually as "Mrs. Adt."

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs allege violations of provisions of 12 C.F.R. § 1024 *et seq.* ("Regulation X"), the implementing regulation for the Real Estate Settlement Procedures Act (the "RESPA"), 12 U.S.C. § 2601 *et seq.*, in Count One; the Federal Trade Commission Act (the "FTCA"), 15 U.S.C. § 41 *et seq.*, in Count Four; the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et seq.*, in Count Five; and the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C § 1692 *et seq.*, in Count Six.

For the reasons that follow, the Court will grant the Motion in part and deny it in part. The Court will dismiss Counts I-A, I-B, III, IV, V, and VI.

## I. Standard of Review

"A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard that applies to a Rule 12(b)(6)[5] motion." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). As a practical matter, "the distinction is one without a difference." *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and

---

[4] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Plaintiffs allege common law breach of contract claims in Counts Two and Three.

[5] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."

conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

In ruling on a motion for judgment on the pleadings, the Court "'may consider the Answer[6] as well,' and the factual allegations in the Answer are taken as true to the extent they have not been denied or do not conflict with the Complaint." *Pro-Concepts, LLC v. Resh*, No. 2:12cv573, 2014 WL 594294, at *5 (E.D. Va. Feb. 11, 2014) (quoting *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012)); *see also Bremus v. AMR Corp.*, 527 B.R. 221, 225 (E.D. Va. 2014) ("District courts may consider the complaint, answers, matters of public record, exhibits to the complaint and answer, and 'exhibits to the Rule 12(c) motions that were integral to the complaint and authentic.'" (footnote omitted) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014))).

A court should grant a motion for judgment on the pleadings only if, "'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot

---

[6] Although Nationstar has submitted an Answer, the Answer includes no exhibits, and nothing in the Answer adds to the factual allegations in the Complaint without 'den[ying] or . . . conflict[ing] with" those facts, *Pro-Concepts*, 2014 WL 594294, at *5, so the Court relies—as do the parties' briefs—solely on the factual allegations in the Complaint.

prove any set of facts in support of his claim entitling him to relief.'" *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999)); *see also Pro-Concepts*, 2014 WL 549294, at *5 ("[J]udgment on the pleadings is only appropriate when, . . . the case can be determined as a matter of law.").

## II. Factual and Procedural Background

### A.    Summary of Allegations in the Complaint

In February of 1981, Mrs. Adt and her husband entered into a mortgage loan agreement to finance the purchase of land in Mechanicsville, Virginia 23116 (the "Property"). The loan was evidenced by a Promissory Note and secured by a Deed of Trust.

In October of 2015, Mr. Adt passed away, significantly reducing the Adts' household income. Shortly thereafter, Nationstar acquired the mortgage loan and became Mrs. Adt's loan servicer. Although Mrs. Adt had timely made all previous mortgage payments, she contacted Nationstar to inquire whether she could do anything "to make her mortgage payment more affordable." (Compl. ¶ 9, ECF No. 1-1.) Nationstar informed Mrs. Adt that she could apply for a loan modification, which she did. On March 1, 2016, Nationstar approved Mrs. Adt for a trial loan modification, and sent her a letter confirming the approval and setting forth a schedule and terms for trial period payments (the "TPP Agreement"). [7]

The TPP Agreement stated that the trial loan modification was "the *first* step in the process toward qualifying for a **permanent** loan modification." (TPP Agreement 3, ECF No. 6-4 (emphases in original).) The TPP Agreement directed Mrs. Adt to make mortgage payments in April, May, June, and July of 2016, and informed her that "[a]fter all trial payments

---

[7] Plaintiffs and Nationstar both submitted copies of the TPP Agreement. The Court will cite throughout to the TPP Agreement Nationstar submitted because it is a complete copy of the TPP Agreement. (ECF No. 6-4.) Plaintiffs' copy of the TPP Agreement appears to be missing page four.

are made on time and you have submitted all the required documents, your mortgage will then be reviewed to be permanently modified." (*Id.*) Specifically, the TPP Agreement provided that once Mrs. Adt had timely made each payment, "submitted two signed copies of the modification agreement," and Nationstar had signed the modification agreement, her mortgage would "be permanently modified in accordance with the terms of the modification agreement." (*Id.* at 5.) The TPP Agreement stated that Mrs. Adt's "current loan documents [would] remain in effect," but Mrs. Adt could choose to "make the trial period payment instead of the payment required under [her] loan documents." (*Id.*) In addition, Nationstar agreed that it would "not refer [the] loan to foreclosure or proceed to foreclosure sale during the Trial Period Plan," so long as the Mrs. Adt complied "with the terms of the Trial Period Plan." (*Id.*)

Mrs. Adt timely made all payments in the trial period. In July of 2016, after making the final payment, she contacted Nationstar twice[8] to request information regarding finalizing her loan modification. Nationstar informed Mrs. Adt that "it would only be a few days" before the final loan modification documents would be ready, and told her not to make further payments. (Compl. ¶ 16.) When the documents did not arrive, Mrs. Adt continued to regularly follow up on the status of the final loan modification. Each time Mrs. Adt contacted Nationstar, Nationstar informed her that the documents "were ready but waiting for approval from the underwriter," and told her to withhold further mortgage payments. (*Id.* ¶ 17.) During the same period, however, Nationstar began calling Mrs. Adt and sending her letters indicating that her loan was delinquent and had been referred to an attorney for legal action. (Compl. ¶¶ 21–22.) When Mrs. Adt called Nationstar, it informed her that she had "nothing due" and advised her to continue to wait for the final loan modification documents. (Compl. ¶ 21.)

---

[8] The Complaint does not provide specific dates, only that Mrs. Adt contacted Nationstar sometime in "Mid-July 2016" and again "[a] few days later, still in July." (*Id.* ¶¶ 15, 16.)

In October of 2016, Mrs. Adt hired an attorney who contacted Nationstar on October 26, 2016. A Nationstar representative informed Mrs. Adt's attorney that "the investor had to 'reclassify the loan[,]' [which] needed to be 60 days past due for the final modification documents to be generated[,] but any missed payments during that time would be capitalized in the loan modification and would not negatively affect the loan." (*Id.* ¶ 25.) The representative also stated that Mrs. Adt could "make a payment if she chooses," but that nothing was due at that time and any payments would "be applied to the princip[al] of the loan." (*Id.* ¶ 26.)

In November of 2016, on three separate occasions, three different Nationstar representatives informed Mrs. Adt that her loan was current and that the underwriting department was still reviewing the final loan modification. "During this entire time, [Nationstar] falsely reported information regarding Mrs. Adt's debt[] to one or more consumer reporting agencies and failed to report the debt as being in dispute . . . ." (*Id.* ¶ 39.) Mrs. Adt "saved enough funds to cover a payment in the amount of the loan modification for each and every month that Nationstar refused to accept payment." (*Id.* ¶ 30.)

Sometime after November 15, 2016, Ms. Adt, through her attorney, received notice of a pending foreclosure sale on the Property, scheduled for December 16, 2016. Her attorney sent Nationstar a Notice of Error pursuant to 12 C.F.R. § 1024.35,[9] but received no response. On November 29, 2016, the foreclosure sale was postponed. (Compl. ¶ 36.) Mrs. Adt's attorney contacted Nationstar several more times regarding the status of the loan modification and was informed each time that the documents were still under review.

---

[9] The Code of Federal Regulations defines a "Notice of Error" as "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). Under § 1024.35, servicers must comply with certain requirements upon receiving a Notice of Error.

## B. Procedural Background

On January 30, 2017, Plaintiffs filed their six-count Complaint in the Circuit Court of

Hanover County, Virginia. Nationstar timely removed to this Court and filed an Answer and the

Motion. Plaintiffs responded to the Motion, and Nationstar replied.

Plaintiffs assert the following six counts against Nationstar:

**Count I:** Nationstar violated various provisions of the RESPA[10] by failing to respond to the Notice of Error and provide timely disclosures, and by scheduling the Property for a foreclosure sale (the "Regulation X Claim").[11]

**Count II:** Nationstar breached the terms of the TPP Agreement by failing to modify Mrs. Adt's loan as promised (the "Breach of TPP Agreement Claim").

**Count III:** Nationstar violated the covenant of good faith and fair dealing inherent in the Promissory Note and Deed of Trust (the "Good Faith and Fair Dealing Claim").

**Count IV[12]:** Nationstar affirmatively made false or misleading representations in violation of Section 5(a) of the FTCA (the "FTCA Claim").

**Count V:** Nationstar violated various provisions of the FCRA by continuing to furnish incomplete or inaccurate information to credit reporting agencies without providing notice that Mrs. Adt disputed the information (the "FCRA Claim").

**Count VI:** Nationstar breached certain provisions of the FDCPA by falsely representing the character, amount, or status of the debt, (the "FDCPA Claim").

---

[10] Plaintiffs allege that Nationstar violated three separate provisions of Regulation X. The Court analyzes each asserted violation separately, but Plaintiffs state all violations in Count I. In analysis, the Court will divide its discussion by the individual provision allegedly violated.

[11] So-called "Regulation X," codified at 12 CFR §§ 1024.1–1024.41, implements the RESPA's provisions. As the parties do, the Court will refer to Plaintiffs' claims under the RESPA as the "Regulation X Claim."

[12] Plaintiffs withdrew Count IV, the FTCA Claim, in response to Nationstar's Motion.

Plaintiffs seek statutory damages, punitive damages, and $326,000 in compensatory damages.[13]

### III. Analysis

Nationstar moves for judgment on the pleadings as to all of Plaintiffs' claims. Accordingly, the Court examines each count to assess whether, "'after accepting all well-pleaded allegations in [Plaintiffs'] complaint as true and drawing all reasonable factual inferences from those facts in [Plaintiffs'] favor, it appears certain that [Plaintiffs'] cannot prove any set of facts in support of [their] claim entitling [them] to relief.'" *Drager*, 741 F.3d at 474 (quoting *Edwards*, 178 F.3d at 244). The Court finds that Plaintiffs state a claim for part of Count One, the Regulation X Claim, and Count Two, the Breach of the TPP Agreement Claim. Plaintiffs, however, fail to state a claim for Count Three, the Good Faith and Fair Dealing Claim, Count Five, the FCRA Claim, and Count Six, the FDCPA Claim.

#### A.    **Count One, the Regulation X Claim**

Plaintiffs assert that Nationstar violated various provisions of the RESPA. First, they contend that Nationstar violated 12 C.F.R. § 1024.35(e)(3)[14] by not responding to the Notice of

---

[13] Plaintiffs initially sought a preliminary injunction in their Complaint, but withdrew this request because Nationstar completed the final loan modification, and the loan was current and no longer in foreclosure status.

[14] Section 1024.35(e)(3) governs the time in which a servicer must respond to Notices of error. It sets forth the following relevant time periods:

> (A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

> (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

Error[15] Mrs. Adt's attorney sent (Count I-A, the "Notice of Error Subclaim"), and § 1024.38(b)[16] by failing to investigate and provide Mrs. Adt with timely disclosures of information (Count I-B, the "Timely Disclosure Subclaim"). Second, Plaintiffs contend that Nationstar breached § 1024.41[17] by scheduling the Property for a foreclosure sale (Count I-C, the "Wrongful Foreclosure Subclaim").

Because no private right of action exists under §§ 1024.35 and 1024.38, Counts I-A and I-B, the Notice of Error Subclaim and the Timely Disclosure Subclaim, both fail. However, private citizens may sue for violations of § 1024.41, under which Plaintiffs bring their Wrongful Foreclosure Subclaim. Taking the allegations in the Complaint as true, Nationstar lacked authorization to refer the loan to foreclosure, and Plaintiffs state a claim in Count I-C for a violation of 12 C.F.R. § 1024.41, the Wrongful Foreclosure Subclaim.

### 1. The Notice of Error and Timely Disclosure Subclaims Fail Because No Private Right of Action Exists Under Sections 1025.35 or 1024.38

Plaintiffs contend that Nationstar violated §§ 1024.35 and 1024.38 of Regulation X by failing to respond to Mrs. Adt's Notice of Error requesting accurate and timely disclosures and corrections to Mrs. Adt's loan information. (Compl. ¶¶ 46–49.) Nationstar argues that neither section provides Plaintiffs with a private right of action. Plaintiffs do not respond to this

---

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3).

[15] The Notice of Error was not attached to the Complaint, which alleges conflicting dates for when counsel sent the Notice of Error. The inconsistency, however, does not affect the Court's analysis.

[16] Section 1024.38 governs the general policies, procedures, and requirements for loan servicers.

[17] Section 1024.41 governs the procedures mortgage servicers must follow upon receiving loss mitigation applications from borrowers.

assertion. Regardless, the Notice of Error and Timely Disclosure Subclaims both fail because private citizens lack authorization to enforce 12 C.F.R. §§ 1024.35 and 1024.38.

Private citizens generally cannot sue to enforce federal law unless Congress has provided a private cause of action. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 288–89 (2001). Congress provided no private cause of action for a violation of §§ 1024.35 or 1024.38. Accordingly, even assuming that Nationstar violated these subsections, Plaintiffs possess no private right of action for those violations. *See, e.g.*, *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *10 (D. Md. Feb. 16, 2017) (holding that no private cause of action exists to enforce violations of 12 C.F.R. § 1024.38); *Brown v. Bank of N.Y. Mellon*, No. 1:16-cv-194, 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016) ("Unlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers." (quoting *Gresham v. Wells Fargo Bank, N.A.*, No. 15-40748, 2016 WL 1127717, at *3 (5th Cir. Mar. 21, 2016)).

Accordingly, Plaintiffs fail to state a claim for violations of 12 C.F.R. §§ 1024.35 and 1024.38, Counts I-A and I-B, the Notice of Error and Timely Disclosure Subclaims. The Court will grant the Motion as to Counts I-A and I-B, the §§ 1024.35 and 1024.38 aspects of Count I, the Regulation X Claim.

### 2. Plaintiffs State a Claim for Nationstar's Violation of § 1024.41, the Wrongful Foreclosure Subclaim

Plaintiffs also assert that Nationstar violated 12 C.F.R. § 1024.41 by scheduling the Property for a foreclosure sale during Mrs. Adt's trial loan period. Nationstar contends that § 1024.41 applies only to *pending* loan modification applications. Nationstar argues that Mrs. Adt's application had been reviewed and approved for trial loan modification, bringing her claim outside the scope of § 1024.41. Notwithstanding Nationstar's contentions, Plaintiffs state a

claim for a violation of § 1024.41 because they adequately allege facts supporting the reasonable inference that Nationstar initiated a foreclosure sale at a time when § 1024.41 prohibited it from doing so.

### a. **Legal Standard:  Violation of § 1024.41**

Section 1024.41 specifically provides for a private right of action for a violation of that section.  Unlike §§ 1024.35 and 1024.38, Mrs. Adt, as a borrower, can personally enforce the provisions of § 1024.41.  12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA."); *see also Brown*, 2016 WL 2726645, at *2 ("12 C.F.R. § 1024.41 does allow a borrower to 'enforce the provisions of this section pursuant to section 6(f) of' the [RESPA] . . . ." (quoting 12 C.F.R. § 1024.41(a))).  As relevant here, § 1024.41 specifies certain procedures loan servicers must follow when reviewing a borrower's complete loss mitigation application, commonly referred to as a "loan modification application."[18]  12 C.F.R. § 1024.41(b).  Section 1024.41(f)[19] prohibits a loan servicer such as Nationstar[20] from initiating a foreclosure sale if a borrower submits a complete loss mitigation

---

[18] Under 12 C.F.R. § 1024.41, a complete loss mitigation application is an "application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

[19] Nationstar cites to 12 C.F.R. § 1024.41(g) in support of its argument that it complied with § 1024.41.  Subsection (g), however, applies when "a borrower submits a complete loss mitigation application *after* a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process." 12 C.F.R. § 1024.41(g) (emphasis added).  Mrs. Adt submitted her loss mitigation application well *before* Nationstar notified her of the pending foreclosure:  she submitted the application sometime before March 1, 2016, when Nationstar approved her for the trial loan modification and Nationstar notified her on November 15, 2016, more than eight months later, of the pending foreclosure sale.  Accordingly, 12 C.F.R. § 1024.41(f) governs Plaintiffs' claims, not § 1024.41(g).

[20] The term "servicer," with limited exceptions not applicable here, is defined as anyone "responsible for servicing of a loan (including the person who makes or holds a loan if such

11

application before the loan becomes 120 days delinquent, unless one of the following conditions

(the "pre-foreclosure conditions") has occurred: (1) the servicer has sent the borrower notice that

the borrower is "not eligible for any loss mitigation option"; (2) "[t]he borrower rejects all loss

mitigation options offered by the servicer"; or, (3) "[t]he borrower fails to perform under an

agreement on a loss mitigation option. 12 C.F.R. § 1024.41(f)(2)(i)–(iii).

> **b.** **Plaintiffs Sufficiently Allege that Nationstar Violated**
> **§ 1024.41 by Initiating a Foreclosure Sale Before any**
> **Pre-Foreclosure Condition Occurred**

Under the plain language of § 1024.41, a servicer may not initiate a foreclosure action

unless one of the three enumerated pre-foreclosure conditions has occurred. Based on Plaintiffs'

well-pleaded factual allegations, none of these three conditions had occurred at the time

Nationstar initiated foreclosure actions.

Nationstar notified Mrs. Adt of the pending foreclosure sale on November 15, 2016.

Before that date, Mrs. Adt had not "reject[ed] all loss mitigation options offered by

[Nationstar]." *See* 12 C.F.R. § 1024.41(f)(2)(i). Rather, Plaintiffs allege that Mrs. Adt had

*accepted* the Trial Period Plan and made each payment on time. Neither had Mrs. Adt "fail[ed]

to perform under" the TPP Agreement. *See* 12 C.F.R. § 1024.41(f)(2)(ii). In fact, Plaintiffs

contend that she "completed the Trial Period Plan." (Compl. ¶ 14.) Finally, Nationstar had not

notified Mrs. Adt that she was "not eligible for any loss mitigation option." 12 C.F.R.

§ 1024.41(f)(2)(iii). Instead, Plaintiffs assert that Mrs. Adt was "told by several representatives[]

that the [final loan modification] documents were ready but waiting for approval."

(Compl. ¶ 17.) Plaintiffs set forth no facts indicating that any of the pre-foreclosure conditions

occurred. Under the plain language of § 1024.41(f)(2), Nationstar was prohibited from initiating

---

person also services the loan)." 12 U.S.C. § 2605(i)(2). Nationstar qualifies as a servicer within
the language of § 2605(i)(2). Neither party contends that Nationstar is not a servicer.

a foreclosure sale, and Plaintiffs state a claim for a violation of 12 C.F.R. § 1024.41. The Court will deny the Motion as to Count I-C, the § 1024.41 aspect of the Regulation X Claim.

Accordingly, the Court will grant the Motion as to Counts I-A and I-B, the §§ 1024.35 and 1024.38 aspects of Count I, and deny the Motion as to Count I-C, the § 1024.41 aspect of the Regulation X Claim.

## B.     Count Two, the Breach of the TPP Agreement Claim[21]

Plaintiffs allege that Nationstar breached the TPP Agreement by "failing to provide the loan modification as promised." (Compl. ¶ 56.) First, Nationstar argues, without explanation, that "borrowers cannot sue to enforce TPP agreements." (Mem. Supp. Mot. 8.) Second, Nationstar contends that, even if a borrower could sue to enforce the terms of a TPP Agreement, no breach of those terms occurred here, and Plaintiffs therefore cannot state a claim for a breach of the TPP Agreement. (*Id.*)

Despite Nationstar's assertions to the contrary, Plaintiffs have adequately stated a claim for Count Two, the Breach of the TPP Agreement Claim.

---

[21] The Court exercises supplemental jurisdiction over Plaintiffs' breach of contract claim based on Virginia state law because this claim is so related to Count I, Plaintiffs' Regulation X Claim that it forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

1. **Legal Standard:  Breach of the TPP Agreement**[22]

"Under Virginia law, a party claiming breach of contract must establish three elements to prevail:  (1) a legally enforceable obligation under the contract, (2) a breach of that obligation, and (3) injury or damage to the plaintiff flowing from that breach." *Jones v. Bank of Am., N.A.*, No. 2:11cv443, 2012 WL 405053, at *5 (E.D. Va. Feb. 7, 2012) (internal quotation marks and citations omitted).  "As long as the elements of a breach of contract are satisfied," courts in this jurisdiction recognize that "there is nothing in the terms of [a] TPP [Agreement] or in any regulation that prevents a plaintiff from bringing" a claim for breach of a TPP Agreement. *Nash v. Green Tree Servicing, LLC*, 943 F. Supp. 2d 640, 646 (E.D. Va. 2013) (collecting cases); *see also Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 196 (4th Cir. 2014) (per curiam).

Plaintiffs have adequately pled facts supporting the reasonable inference that:  (1) the TPP Agreement constituted a legally enforceable contract under which Nationstar had obligations; (2) Nationstar breached its obligations under the TPP Agreement; and, (3) Mrs. Adt

---

[22] Although neither party addresses it, the Court must first determine what law governs Plaintiffs' breach of contract claim.  The Court finds that Virginia contract law governs.

A federal court exercising supplemental jurisdiction must apply state substantive law in deciding state law claims. *Adams v. Sch. Bd. of Hanover Cty.*, No. 3:05cv310, 2008 WL 5070454, at *12 (E.D. Va. 2008).  The applicable state law is determined by the choice-of-law rules of the forum state, here, Virginia. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).  Virginia adheres to the principle of *lex loci contractus*; that is, the law of the state where the contract was formed controls questions concerning the validity, effect, and interpretation of a contract. *See e.g.*, *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004).  Finally, under Virginia law, a contract is formed in the state where the final act is done which is necessary to make it binding. *Id.*

In this case, the TPP Agreement directed Mrs. Adt to "accept th[e] offer" by "contact[ing] [Nationstar]" via telephone "or in writing" at Nationstar's Dallas, Texas address and by making the first TPP payment by April 1, 2016.  (TPP Agreement 3.)  Mrs. Adt made her first payment, which was sufficient to constitute acceptance. *See ACMA USA, Inc. v. Surefil, LLC*, No. 3:08cv71, 2008 WL 4775333, at *4 (E.D. Va. Oct. 31, 2008).  Accordingly, the contract was formed in Virginia, and Virginia law therefore governs the "validity, effect, and interpretation" of the TPP Agreement. *Seabulk*, 377 F.3d at 419.

experienced harm as a result. Accordingly, Plaintiffs have pled facts that state a claim for breach of contract.

### 2. The TPP Agreement Constitutes an Enforceable Contract

To establish the first element—the existence of an enforceable contract—a plaintiff must demonstrate that there was an offer, acceptance, and consideration. *Neil*, 596 F. App'x at 196. Here, there was an offer, Mrs. Adt accepted it, and the contract was supported by adequate consideration.

### a. The TPP Agreement Contained an Offer

The TPP Agreement contained an offer from Nationstar to temporarily alter the amount of Mrs. Adt's loan payments. *See Jensen v. IBM*, 454 F.3d 382, 388 (4th Cir. 2006) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his [or her] assent to that bargain is invited and will conclude it." (applying Virginia law and citing Restatement (Second) of Contracts § 24 (Am. Law Inst. 1981))). The language of the TPP Agreement plainly amounts to an offer from Nationstar to temporarily modify Mrs. Adt's loan. (*See, e.g.*, TPP Agreement 8 ("[Y]ou are approved for a Standard Modification"); *id.* at 3 ("To Accept this *Offer* . . . [y]ou must contact us . . .") (emphasis added); *id.* ("What you need to do . . . [t]o accept this *offer* . . .") (emphasis added); *id.* at 6 ("What else should I know about this *offer*?") (emphasis added).) The plain language of the TPP Agreement indicates that it was the "manifestation of willingness to enter into a bargain." *Jensen*, 454 F.3d at 388.

Furthermore, the language of the TPP Agreement and the context in which Nationstar presented it to Mrs. Adt would justify her in "understanding that [her] assent to that bargain [wa]s invited and will conclude it." *Id.* The TPP Agreement instructed Mrs. Adt that, to accept Nationstar's offer, she should contact Nationstar either by phone or in writing "no later than 14

calendar days from the date of this letter to indicate your intent to accept this offer," should make her first trial period payment, and "must make the new monthly trial period payment in place of [her] normal monthly mortgage payment." (TPP Agreement 3.) This language justified Mrs. Adt in believing that she could accept Nationstar's loan modification offer by complying with those instructions. *See, e.g.*, *Neil*, 596 F. App'x at 196 (concluding that similar language in a TPP constituted a valid offer).

### b. Mrs. Adt Accepted the Offer

Mrs. Adt accepted Nationstar's offer by making all payments in the TPP Agreement on time. When a contract indicates the manner of acceptance, and fails to state that it is the *only* permissible manner of acceptance, the offeree may accept in the suggested manner or in any other reasonable manner. *Craddock v. LeClairRyan, P.C.*, No. 3:16-cv-11, 2016 WL 1464562, at *4–5 (E.D. Va. Apr. 12, 2016). Moreover, Nationstar's performance under the TPP Agreement by accepting each mortgage payment amounts to acknowledgement that Mrs. Adt had accepted the offer. *Neil*, 596 F. App'x at 196 n.4 (observing that, although the defendant "did not countersign the agreement as required by the TPP document," a contract nevertheless existed because of the defendant's performance) (citations omitted).

### c. Adequate Consideration Supports the TPP Agreement

The terms of the TPP Agreement required Mrs. Adt to undertake new legal obligations and give up rights she previously had before. These requirements constituted adequate consideration.

Virginia law defines consideration as:

"[T]he price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the

16

trifling inconvenience to the other is generally held sufficient to support the promise."

*Walker v. Arrington*, 403 S.E.2d 693, 695 (Va. 1991) (quoting *Brewer v. First Nat'l Bank Danville*, 120 S.E.2d 273, 279 (Va. 1961)).

Mrs. Adt's additional obligations under the TPP Agreement clearly amount to adequate consideration. First, the TPP Agreement required Mrs. Adt to "make the *new* monthly trial period payments *in place of* [the] normal monthly mortgage payment." (TPP Agreement 3 (emphases added).) Mrs. Adt also agreed that "any prior waiver that allowed [her] to pay directly for taxes and insurance [was] revoked." (*Id.* at 5.) Moreover, Mrs. Adt agreed that, even if she made timely TPP payments, Nationstar would be permitted to disclose to credit reporting agencies that she had entered into a TPP Agreement. (*Id.* at 6.) Finally, by entering into the TPP Agreement, Mrs. Adt accepted the consequence that this course of action "may adversely affect [her] credit score." (*Id.*) Each of these conditions alone could constitute sufficient consideration. Together, they clearly amount to more than a "trifling inconvenience," sufficient to serve as consideration.

Because the TPP Agreement contained an offer, which Mrs. Adt accepted in the suggested manner, and provided adequate consideration, the TPP Agreement amounts to an enforceable contract. *See Neil*, 596 F. App'x at 197.

### 3.  Plaintiffs Plausibly Allege that Nationstar Breached the TPP Agreement

Plaintiffs allege that Mrs. Adt met her obligations under the TPP Agreement and that Nationstar breached the terms of that agreement by failing to provide the loan modification. Nationstar counters that its duty to provide a permanent loan modification was "contingent on

several factors." (Mem. Supp. Mot. 8.) At this early stage of the litigation, Plaintiffs plead facts that sufficiently allege Nationstar breached the terms of the TPP Agreement.[23]

The TPP Agreement provides that Nationstar "will not refer [the] loan to foreclosure or proceed to foreclosure sale during the Trial Period Plan, provided [Mrs. Adt was] complying with the terms of the Trial Period Plan." (TPP Agreement 5.) Plaintiffs allege that Mrs. Adt complied with all terms of the TPP Agreement, but still received a notice of foreclosure. (Compl. ¶¶ 14, 31.) These allegations support a reasonable inference that Nationstar breached this provision of the TPP Agreement. *See Wilson v. Suntrust Mortg., Inc.*, No. 3:13cv622, 2014 WL 1003745, at *4 (E.D. Va. Mar. 13, 2014) (concluding that the plaintiff sufficiently pled that the lender breached the TPP by alleging that the lender sent foreclosure notices). Plaintiffs, therefore, plausibly allege that Nationstar breached the TPP Agreement.[24]

### 4. Plaintiffs Plausibly Allege Damages Arising From Nationstar's Breach of the TPP Agreement

Virginia generally limits damages for breach of contract to the "pecuniary loss" that was reasonably contemplated by the parties at the time they formed the contract. *See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 671 (4th Cir. 1986). Regardless of how foreseeable non-pecuniary injuries resulting from certain contract breaches may be, "damages such as mental anguish, emotional distress, and humiliation—'are not recoverable for breach of

---

[23] The Court need not limit its analysis only to the specific act that Plaintiffs allege constitutes Nationstar's breach. The Court may consider any grounds for breach of contract supported by the allegations of the Complaint because, to stave off a challenge to the Complaint, Plaintiffs need only state "*factual* allegations" that entitle them to relief. *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). This Court is, as it must be, reluctant to dismiss "a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* at 346. Accordingly, the Court looks to all the factual allegations in the Complaint to determine if Plaintiffs state a claim against Nationstar for breach of contract.

[24] The Court declines to hold at this stage that Nationstar was obligated to provide Mrs. Adt with a permanent loan modification or whether a breach of contract claim may lie for the length of time it took Nationstar to issue the final loan modification documents.

contract.'" *Smith v. McLaughlin*, 769 S.E.2d 7, 20 (quoting *Isle of Wight Cty. v. Nogiec*, 704

S.E.2d 83, 87 (Va. 2011)). Nevertheless, Plaintiffs allege that Mrs. Adt's "credit has been

destroyed," which is compensable. (Compl. ¶ 57; *see Wilson*, 2014 WL 1003745, at *4.)

Accordingly, Plaintiffs sufficiently plead damages resulting from Nationstar's breach of the TPP

Agreement.

Plaintiffs plead facts that sufficiently support a reasonable inference that Mrs. Adt

accepted an offer from Nationstar to enter into a contract, the terms of which were memorialized

in the TPP Agreement. Plaintiffs assert facts indicating that Mrs. Adt fulfilled her obligations

under the TPP Agreement by making timely monthly payments. And Plaintiffs plausibly allege

facts supporting the reasonable inference that Nationstar breached the TPP Agreement by

initiating a foreclosure sale while Mrs. Adt's final loan documents were still under review.

Therefore, the Court denies Nationstar's Motion as to Count II because Plaintiffs present

sufficient facts, which if true, state a claim for breach of contract.

### C. Count Three, the Good Faith and Fair Dealing Claim[25]

Plaintiffs allege that Nationstar breached the implied covenant of good faith and fair

dealing in the Promissory Note and Deed of Trust by failing to complete the loan modification

process, instituting a foreclosure while loan modification was ongoing, and "actively and

specifically instructing [Mrs. Adt] to breach the terms of the note and deed of trust." (Compl.

¶ 61.) Nationstar contends that no breach of this implied covenant occurred because no term

exists in the Note or Deed of Trust requiring Nationstar to "'complete the loan modification

process.'" (Mem. Supp. Mot. 10 (quoting Compl. ¶ 61).) Because the facts Plaintiffs allege only

---

[25] The Court exercises supplemental jurisdiction over Plaintiffs' breach of contract claim based on Virginia state law because this claim is so related to Count I, Plaintiffs' Regulation X Claim that it forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

that Nationstar has exercised its contractual rights under the Note and Deed of Trust and nothing

indicates that Nationstar prevented Mrs. Adt from fulfilling her contractual obligations, Plaintiffs

fail to state a claim for breach of the implied covenant of good faith and fair dealing.

### 1.    Legal Standard:  Breach of the Implied Covenant of Good Faith and Fair Dealing

Every contract governed by Virginia law[26] "contains an implied covenant of good faith

and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)

(citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998)).  A

claim for breach of the implied covenant of good faith and fair dealing under Virginia law

requires:  "(1) a contractual relationship between the parties, and[,] (2) a breach of the implied

covenant." *Id.* (citations omitted).  A breach of this duty, however, is not a separate tort, but

rather "'gives rise only to a cause of action for breach of contract.'" *Smith v. Flagstar Bank,*

*F.S.B.*, No. 3:14cv741, 2015 WL 1221270, at *6 (E.D. Va. Mar. 17, 2015) (quoting *Charles E.*

*Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996)).

### 2.    Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

#### a.    A Contractual Relationship Existed

As to the first element, it is well settled that "'[a] deed of trust is construed as a contract

under Virginia law.'" *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670, 2012 WL

5404084, at *4 (E.D. Va. Nov. 5, 2012) (quoting *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d

---

[26] The Deed of Trust contains an express choice-of-law provision, which provides that "federal law and the law of the jurisdiction in which the Property is located" shall govern the contract terms.  (Deed of Trust 12, ECF No. 6-2.)  The Property is located in Mechanicsville, Virginia.  This Court applies Virginia law to this claim under supplemental jurisdiction, *see, e.g.*, *Klaxon*, 313 U.S. at 496–97, and "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances," *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  Accordingly, Virginia law governs the terms of the Deed of Trust.

196, 200 (Va. 2012) (alteration in original), and "notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract," *id.* (quoting *Va. Hous. Dev. Auth. v. Fox Run Ltd. P'ship*, 497 S.E. 2d 747, 752 (Va. 1998)). Accordingly, the Deed of Trust clearly established a contractual relationship between the parties.

### b. Nationstar Did Not Breach Its Contractual Duties

The duty of good faith and fair dealing "'prohibits a party from acting arbitrarily, unreasonably, and in bad faith'" or "'in such a manner as to prevent the other party from performing its obligations under the contract.'" *Bourdelais*, 2012 WL 5404084, at \*5 (quoting *SunTrust Mortg., Inc. v. Mortgs. Unlimited, Inc.*, No. 3:11cv861, 2012 WL 1942056, at \*3 (E.D. Va. May 29, 2012)). However, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). In other words, the implied covenant "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Id.* (citations omitted).

Plaintiffs assert that Nationstar breached the implied covenant of good faith and fair dealing under the Note and Deed of Trust by: (1) failing to properly complete the loan modification process; (2) persisting with a foreclosure auction on the property while the loan modification process was ongoing; and, (3) actively instructing Mrs. Adt to breach the terms of the Promissory Note and Deed of Trust. (Compl. ¶¶ 60–61.)

The first reason Plaintiffs rely on fails as a matter of law. Courts have unanimously concluded that the duty of good faith and fair dealing does not control the review and processing of loan modifications. *See, e.g.*, *Cagle v. CitiMortgage, Inc.*, No. 3:13cv807, 2015 WL 2063990, at \*8 (E.D. Va. May 1, 2015); *Flagstar Bank*, 2015 WL 1221270, at \*6; *Bourdelais*, 2012 WL 5404084, at \*5 (collecting cases). Moreover, nothing in the Note or Deed of Trust indicates that

Nationstar was obligated to modify Mrs. Adt's loan or do so in any particular manner. Absent express terms, invoking an abstract notion of "good faith" is insufficient to impose a contractual requirement to complete a loan modification. *Chance v. Wells Fargo Bank, N.A.*, No. 3:12cv320, 2012 WL 4461495, at *4 (E.D. Va. Sept. 25, 2012); *see also De Vera v. Bank of Am., N.A.*, No. 2:12cv17, 2012 WL 2400627, at *3 (E.D. Va. June 25, 2012).

The second reason Plaintiffs provide for Nationstar's alleged breach of the implied covenant fails factually. Plaintiffs contend that Nationstar "persist[ed] with a foreclosure auction on the property," (Compl. ¶ 61), but also allege that Nationstar postponed the foreclosure sale within fourteen days after sending notice of it. Aside from the single conclusory assertion that Nationstar "persist[ed] with a foreclosure auction," (*id.*), the rest of the allegations in the Complaint belie this contention.[27] Plaintiffs cannot establish a breach of the implied covenant of good faith and fair dealing based on a conclusory allegation that conflicts with the more specific factual allegations in their Complaint.

Finally, Plaintiffs do not plead facts supporting a plausible inference that Nationstar prevented Mrs. Adt from performing her obligations under the contract. *See Bourdelais*, 2012 WL 5404084, at *5. Although Plaintiffs allege that Nationstar repeatedly "instructed Mrs. Adt to withhold payment" on the loan, (*see* Compl. ¶¶ 16–17, 25–30), these representations did not "'prevent [Mrs. Adt] from performing [her] obligations under the contract.'" *De Vera*, 2012 WL 2400627, *3 (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp.*, 213 F.3d 175, 182 (4th Cir. 2000)). Moreover, Mrs. Adt also alleges that Nationstar told her she could "make a payment if she chooses," but that nothing was due at that time and any payments would "be applied to the princip[al] of the loan." (Compl. ¶ 26 (internal quotation marks omitted).)

---

[27] Moreover, in withdrawing her request for a preliminary injunction, Plaintiffs state that "the loan is current and no longer in foreclosure status." (Resp. Mot. 13.)

Plaintiffs fail to plead facts supporting a reasonable inference that Nationstar breached an implied covenant of good faith and fair dealing. The Court will dismiss Count III.

### D.     Count Five, the FCRA Claim

Plaintiffs allege that Nationstar violated two provisions of the FCRA. First, they contend that Nationstar violated 15 U.S.C. § 1681s-2(a)(1)(B), (Compl. ¶¶ 73, 76),which prohibits "furnishers" of consumer information from furnishing "information relating to a consumer to any consumer reporting agency if . . . the person has been notified by the consumer . . . that specific information is inaccurate; and . . . the information is, in fact, inaccurate" 15 U.S.C. § 1681s-2(a)(1)(B). Second, they assert that Nationstar violated 15 U.S.C. § 1681s-2(b), (Compl. ¶ 76), which requires furnishers to take certain steps, including conduct an investigation, when the furnisher receives notice from a CRA "of a dispute with regard to the completeness or accuracy of any information provided by a person to a [CRA]." 15 U.S.C. § 1681s-2(b)(1). Plaintiffs fail to state a claim for either alleged violation.

#### 1.     No Private Right Exists for a Violation of § 1681s-2(a)(1)(B)

Plaintiffs cannot state a claim for a violation of 15 U.S.C. § 1681s-2(a)(1)(B) because the "FCRA explicitly bars private suits for violations of § 1681s-2(a)." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 149 (4th Cir. 2008); *see also Rossmann v. Lazarus*, No. 1:08cv316, 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008) ("There is no private right of action for [a] violation of 15 U.S.C. § 1681s-2(a)."). Accordingly, to the extent Plaintiffs' FCRA Claim relies on a purported violation of 15 U.S.C. §1681s-2(a)(1)(B), that claim cannot survive.

#### 2.     Plaintiffs  Cannot State a Claim for a Violation of § 1681s-2(b)(2) Because They Fail to Allege That Mrs. Adt Disputed Information with a CRA

In contrast, a consumer may privately sue for a violation of 15 U.S.C. § 1681s-2(b). *Saunders*, 526 F.3d at 149. To adequately state such a claim, a plaintiff must sufficiently allege:

(1) that [he or she] notified a consumer reporting agency that [he or she] disputed the accuracy of information in [his or her] consumer report; (2) that the consumer reporting agency notified [the furnisher] of [p]laintiff's dispute; and[,] (3) that [the furnisher] failed to adequately investigate after receiving the notice from the consumer reporting agency.

*Rossmann*, 2008 WL 4181195, at *7 (citations omitted).

Plaintiffs never allege that Mrs. Adt notified a CRA to dispute information in her credit report. Plaintiffs allege that Mrs. Adt repeatedly notified *Nationstar*, a furnisher, that it was reporting incorrect information, but nowhere do they state that Mrs. Adt notified a *CRA* of her dispute with Nationstar's reporting. Plaintiffs assert that Mrs. Adt "notified Nationstar that she was, in fact, . . . not delinquent," (Compl. ¶ 71), and that she "informed Nationstar, over the telephone and/or in writing, that she disputed the completeness or accuracy of information," (*id.* ¶ 78). However, because Plaintiffs never assert that Mrs. Adt "notified a consumer reporting agency that [she] disputed the accuracy of information in [her] consumer report," they cannot state a claim for a violation of § 1681s-2(b)(2). *See Rossmann*, 2008 WL 4181195, at *7.

Because no private right of action exists under § 1681s-2(a) and because Plaintiffs do not allege that Mrs. Adt disputed the information in her consumer report with a CRA, they cannot state a claim for a violation of the FCRA.[28] The Court will dismiss Count V, the FCRA Claim.

### E.    Count Six, the FDCPA Claim

To succeed on an FDCPA claim, a plaintiff must demonstrate that "'(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission

---

[28] To the extent Plaintiffs assert that Nationstar's reporting of inaccurate information constitutes defamation, this contention also fails. (Compl. ¶¶ 39, 40); (Pl.'s Opp'n 9, ECF No. 10.)  With limited exceptions, state law claims relating to any matter regulated by the FCRA are generally barred by 15 U.S.C. § 1681t(b), the FCRA's sweeping preemption provision. *See Ross v. FDIC*, 625 F.3d 808, 813–14 (4th Cir. 2010).  Under § 1681h(e), "no consumer may bring any action or proceeding in the nature of defamation . . . except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e)

prohibited by the FDCPA.'" *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012) (quoting *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005)).

It is well established in the Eastern District of Virginia and elsewhere that mortgage lenders and servicing companies, like Nationstar, are not "debt collectors" under the FDCPA. *See, e.g.*, *Brown*, 2016 WL 2726645, at *4 ("'[C]ourts in this district have consistently held, without reversal, that mortgage servicers are not debt collectors under the FDCPA.'" (quoting *Schmidt v. Wells Fargo Home Mortg.*, No. 3:11cv59, 2011 WL 1597658, at *4 (E.D. Va. Apr. 26, 2011))); *Scott v. Wells Fargo Home Mortg.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) ("[T]he law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." (emphasis in original)).

Because Plaintiffs fail to plead facts alleging that Nationstar was a "debt collector," they cannot state a claim for a violation of the FDCPA. The Court will dismiss Count VI, the FDCPA Claim.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Motion in part and deny it in part. The Court will dismiss Counts I-A, I-B, III, IV, V, and VI. An appropriate Order shall issue.

/s/

M Hannah Lauck
United States District Judge

Date: 3/30/18
Richmond, Virginia